**RECEIVED**

**MAR 11 2019**

# UNITED STATES DISTRICT COURT
### for the

U.S. District of _Nashville, Tennessee_

_Middle_ Division

**U.S. DISTRICT COURT**
**MIDDLE DISTRICT OF TENN**

Case No. _____

_(to be filled in by the Clerk's Office)_

_Julius Perkins_
_____
_Plaintiff(s)_
_(Write the full name of each plaintiff who is filing this complaint._
_If the names of all the plaintiffs cannot fit in the space above,_
_please write "see attached" in the space and attach an additional_
_page with the full list of names.)_

-v-

_Davidson County District Attorney's Office_
_ET. AL._ _Defendant(s)_
_(Write the full name of each defendant who is being sued. If the_
_names of all the defendants cannot fit in the space above, please_
_write "see attached" in the space and attach an additional page_
_with the full list of names. Do not include addresses here.)_

)
)
)
)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
### (Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should _not_ contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include _only_: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

I. **The Parties to This Complaint**

A. **The Plaintiff(s)**

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

Name _Julius Q. Perkins #258949_

All other names by which
you have been known: _Northeast Correctional Complex_
ID Number
Current Institution _5242 Highway 67 West, P.O. Box 5000_
Address

_Mountain City_        _TN._    _37683 -5000_
　　　　City　　　　　　　State　　　　Zip Code

B. **The Defendant(s)**

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. Make sure that the defendant(s) listed below are identical to those contained in the above caption. For an individual defendant, include the person's job or title *(if known)* and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1
Name _Assistant D.A. Dan Hamm ; ET. Al._
Job or Title *(if known)* _Assistant District Attorney D.A.'s Office_
Shield Number _3735 (B.P.R. #)_
Employer _Davidson County Criminal Court, 20th Jud. Dist._
Address _222 2nd Ave. N.; Ste 500; Washington Sq._
_Nashville_        _TN._    _37201-1649_
　　　City　　　　　　State　　　Zip Code

☑ Individual capacity  ☐ Official capacity

Defendant No. 2
Name _Mr. Glenn Funk ; ET. Al._
Job or Title *(if known)* _Attorney General OF Davidson County_
Shield Number
Employer _Davidson County Criminal Ct. D.A.'s Office_
Address _222 2nd Ave. N.; Ste. 500; Washington Sq._
_Nashville_        _TN._    _37201-1649_
　　　City　　　　　　State　　　Zip Code

☑ Individual capacity  ☐ Official capacity

Defendant No. 3
    Name _State of Tennessee Judicial Department Et. Al._
    Job or Title *(if known)*
    Shield Number _NA_
    Employer _David County. Seat. 20th Judicial District_
    Address _Metro Mayor's Office_
    _Nashville_ _Tn._ _37201_
        City      State     Zip Code

    [ ] Individual capacity  [✓] Official capacity

Defendant No. 4
    Name _Davidson Homicide Department_
    Job or Title *(if known)* _Dectective Robert Anderson_
    Shield Number _Unknown_
    Employer _Davidson County P.D_
    Address
    _Nashville_ _Tn._ _37201_
        City      State     Zip Code

    [ ] Individual capacity  [✓] Official capacity

## II.  Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.    Are you bringing suit against *(check all that apply)*:

    [ ] Federal officials (a *Bivens* claim)

    [✓] State or local officials (a § 1983 claim)

B.    Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials?

_Constitional Amendments 14th, 8th, 16th, 1st and many others_

C.    Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

_N/A_

D. Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. If you are suing under section 1983, explain how each defendant acted under color of state or local law. If you are suing under *Bivens*, explain how each defendant acted under color of federal law. Attach additional pages if needed.

_False Imprisonment & Wrongful Prosecution Violating 5th, 6th, 1st_

## III. Prisoner Status

Indicate whether you are a prisoner or other confined person as follows *(check all that apply)*:

- ☐ Pretrial detainee
- ☐ Civilly committed detainee
- ☐ Immigration detainee
- ☑ Convicted and sentenced state prisoner
- ☐ Convicted and sentenced federal prisoner
- ☐ Other *(explain)*  _N/A_

## IV. Statement of Claim

State as briefly as possible the facts of your case. Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A. If the events giving rise to your claim arose outside an institution, describe where and when they arose.

_N/A_

B. If the events giving rise to your claim arose in an institution, describe where and when they arose.

_Davidson County Criminal Court (s) At Nashville, Tennessee_

C.   What date and approximate time did the events giving rise to your claim(s) occur?

*October "2002" Several Appeals has been filed the last Denial was March 2018. See C.C.A's (Tenn. Supreme C.C.A's)*

D.   What are the facts underlying your claim(s)? *(For example: What happened to you? Who did what? Was anyone else involved? Who else saw what happened?)*

*See Attachment Pages*

## V.   Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.

*N/A*

## VI.   Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged. Explain the basis for these claims.

*See Attachment pages proceeding to this Complaint. (Pages 12-20) Attached to this Complaint.*

## VII.  Exhaustion of Administrative Remedies Administrative Procedures

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures.  Your case may be dismissed if you have not exhausted your administrative remedies.

A.  Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☐ Yes

☑ No

If yes, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).

_____ N / A _____

B.  Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?

☐ Yes

☐ No          N/A   In this Instant

☐ Do not know          Civil Action

C.  Does the grievance procedure at the jail, prison, or other correctional facility where your claim(s) arose cover some or all of your claims?

☐ Yes          Same As Above

☐ No          Section "B"

☐ Do not know

If yes, which claim(s)?

_____ Claim against Attorney General's Office, not the Jail.

D.  Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes

☑ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes

☑ No

E.  If you did file a grievance:

1.  Where did you file the grievance?

    N/A

2.  What did you claim in your grievance?

    N/A

3.  What was the result, if any?

    N/A

4.  What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. *(Describe all efforts to appeal to the highest level of the grievance process.)*

    N/A

F.     If you did not file a grievance:

1.   If there are any reasons why you did not file a grievance, state them here:

N/A   In this Instant Civil matter

2.   If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

Same As Above

G.     Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

This matter involves Davidson County D.A.'s Office

*(Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.)*

## VIII.   Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).

To the best of your knowledge, have you had a case dismissed based on this "three strikes rule"?

☐ Yes

☑ No

If yes, state which court dismissed your case, when this occurred, and attach a copy of the order if possible.

N/A

A.    Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

    ☐ Yes

    ☑ No

B.    If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

    1.    Parties to the previous lawsuit

        Plaintiff(s) _____

        Defendant(s) _____

    2.    Court *(if federal court, name the district; if state court, name the county and State)*

    _____

    3.    Docket or index number

    _____

    4.    Name of Judge assigned to your case

    _____

    5.    Approximate date of filing lawsuit

    _____

    6.    Is the case still pending?

        ☐ Yes

        ☑ No

        If no, give the approximate date of disposition. _____N / A_____

    7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

    _____N / A_____

C.    Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes

☑ No

D.    If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. *(If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)*

1.    Parties to the previous lawsuit

Plaintiff(s) _____ N/A _____

Defendant(s) _____ _____

2.    Court *(if federal court, name the district; if state court, name the county and State)*

_____ N/A _____

3.    Docket or index number

_____ N/A _____

4.    Name of Judge assigned to your case

_____ N/A _____

5.    Approximate date of filing lawsuit

_____ N/A _____

6.    Is the case still pending?

☐ Yes

☑ No

If no, give the approximate date of disposition _____ N/A _____

7.    What was the result of the case? *(For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)*

_____ N/A _____

IX.    **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.    **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:    _March 5th, 2019_

Signature of Plaintiff    _Julius Jenkins_

Printed Name of Plaintiff    _Julius Q. Perkins_

Prison Identification #    _# 258949_

Prison Address    _N.E.C.X. ; 5249 Hwy. 67 West ; P.O. Box 5000_
_Mountain City        Tn.   37683-5000_
City                State        Zip Code

B.    **For Attorneys**

Date of signing:    _____

Signature of Attorney    _____

Printed Name of Attorney    _____

Bar Number    _____

Name of Law Firm    _____

Address    _____
City                State        Zip Code

Telephone Number    _____

E-mail Address    _____

# Brief Summary Statement
## Of Facts

This is a complaint whereas the petitioner/Plaintiff, Julius Q. Perkins, herein asserts the facts whereas, The Davidson County Criminal Courts Attorney Generals Office ET. Al., and the A.D.A. Mr. Dan Hamm, has indeed wrongfully convicted the said plaintiff for the offense of "Felony Murder", and thus falsely imprisoned him where he was sentenced to life imprisonment for a murder he in FACT did not commit. The Homicide Detectives of Davidson County at Nashville, Tennessee, fabricated statements and unreliable evidence that led and aided in the plaintiff's conviction.

The State of Tennessee's D.A's Office and A.D.A. Dan Hamm knew of this evidence when they, in fact knew that the case they were presenting was merely a theory, and there was no reasonable doubt to convict him of the offense. The trial Judge had already stated that "the prosecution's case was undoubtly just that a theory. But once this theory was stated before the jury, the damage had already been done. None of this was corrected by the prosecution when they undoubtedly knew there was no evidence to convict the plaintiff of felony murder. Even the many inconsistent statements made by the Detective(s) involving the alleged evidence was never corrected by the State, but allowed it to become admissable in court records. The plaintiff in this instant case tried his best to assist the prosecutor's and Detectives in this matter and everything he told was consistent. The actual murderer was positively identified and the second party involved was never investigated, nor arrested even when the plaintiff gave the other party whom was involved. Due to the plaintiff picking up both of the guilty parties up after he was stopped by the two and gave them a ride to an apartment complex, the State held him criminal responsible even though he was waiting outside so he could drop them back off to where he picked them up in the first place.

The fact of the matter within this claim is that the petitioner is innocent and the State simply refuses to correct this matter when the immediate evidence is in the overwhelming favor of the petitioner in this instant case. Therefore the petitioner complaint in this civil action is as follows:

A) - Wrongful prosecution

B). False Imprisonment

C). Defamation of Character

D). Emotional Distress

E). Lose of Personal Values such as home; Good Job; Family; and so much more.

The United States of America including Tennessee has a history of convicting innocent men in murder cases such a this and Deathrow, and after men, such as myself, has been incarcerated for an insurmountable amount of time, losing everything that they have accomplished, including a great family and all his finances, then, and only then do they finally admit that they fouled-up and the convicted party is actually innocent.

Well, this is such a case also, and I should not be put in this position of an ongoing process whereas, convicted men of murder charges spend so many years in prison, then finally deemed innocent after they have been incarcerated for 20 to 30 years. My time that I have lost cannot be replaced, but this matter of my wrongful prosecution and false imprisonment can most definitely be corrected.

Wherefore, the plaintiff, Julius Q. Perkins, request this Honorable Court to assist him by way of Granting this action against the Attorney General's Office, ET. AL. and A.D.A DAN Hamm of Davidson County Criminal Courts and the City of Nashville, Tennessee.

* The plaintiff seeks One million dollars ($1,000,000), for all the damages in this matter, also request that his conviction is overturned and he is released immediately after this cause is investigated and this brought forth to the Davidson County's Attorney General's Office. Attention

Additionally, the prosecutor(s) repeated obvious acts of misconduct, as well as the judge throughout the entire trial proceedings, the introduction of inflammatory remarks and unproven evidence before the court and other issues outlined in this petition have so completely undermined the integrity of this case that this court "must", in the interest of fundamental fairness vacate the conviction(s) and sentence(s) forthwith and remand this cause back to the trial court. All of evidence on behalf of the petitioner, and the prosecution has the duty to furnish "all" of the evidence even if it's in the defense of the petitioner's behalf. This matter "must" be corrected by the State as required by law. Many of the petitioner's United States Constitutional Rights were violated, as well as his rights of the State of Tennessee.

To deprive the defendant of his right to counsel "guaranteed" to him by the United States Constitution under the 6th Amendment to the United States Constitution, and his 5th Amendment Rights to Due Process, as applied to the State of Tennessee under the 14th Amendment of the U.S. Constitution by allowing exclusion of relevant evidence, the court "must" determine that material issues exists other than conduct conforming with character trait and "must" upon request, state on the record the material issues; the ruling; and the reasons for admitting the evidence. They must find "proof" of the other crime(s), wrong or act to be clear and convincing, and the court "must" exclude the evidence of it's probative value is outweighed by the danger of unfair prejudice.

There was undoubtedly a high degree of Prosecutorial and Judicial misconduct throughout the trial proceedings. The prosecuting attorney in this instant case vouched for the truthfulness, and of the prosecution's witness(es). According to the United States Supreme Court in U.S. V. Young, 105 S.Ct. 7038, 470 U.S. 1, (U.S. Okla. 1985) the prosecutor's vouching for the credibility of witnesses and expressing his personal opinion concerning the guilt of the accused pose two (2) dangers. Such comments can convey the impression that evidence not presented,

but known to the prosecutor, supports the charges against him and thus jeopardizes the petitioner's rights to be tried solely on the basis of the evidence not presented; Government and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence. See also, U.S. v. Hermanek, 289 F. 3d 1076 (C.A.9. (Cal.) 2002.

The withholding of evidence from the petitioner as to the credibility of the prosecution's witness(es) is an urgent matter indeed in this instant case. The United State's Supreme Court has a long list of cases in Giglio v. U.S., 92 S. Ct. 763, 405 U.S. 150, (U.S. 1972), As long ago as Mooney v. Holohan, 294 U.S. 103, 112 '55 S. Ct. 340, 342, 79 L. Ed 791 (1935) This court made that deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice. This was reaffirmed in Pyle v. Kansas, 317 U.S. 213, 63 S. Ct. 177, 87 L.Ed 214 (1942). In Napue v. Illinoise, 360 U.S. 294, 79 S.Ct. 1173, 3 L. (d 2d 1217 (1959), the same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected. The major example in the instant case was withholding evidence, giving improper jury instructions, testimonies given by Key State's Witnesses. All these could have impeached the State's Key Witnesses. This is clearly an error that went uncorrected by the State that play a major role in the conviction of the petitioner.

<u>CHALLENGING ISSUES</u>
AND
<u>CASE FACTS</u>

The petitioner, Julius Perkins, was indicted on one count of first degree premeditated murder and one count of first degree felony murder. The petitioner was found guilty of felony murder and not guilty of premeditated murder. Upon conviction, the petitioner was sentenced to life imprisonment. The petitioner would prove to the court that the evidence was insufficient to support his conviction of felony murder. The State failed to show that the victim was actually targeted by the petitioner for an attempt robbery that led to the murder.

In this instant case, there was a very significant error that was used as an important piece of evidence that "tipped the scales" in the prosecution's theory that weighed heavily in finding the petitioner guilty for felony murder, and this issue was the prejudicial testimony regarding the alleged "ski mask" and the jury's viewing of the bag that the evidence was contained in. The evidence was highly prejudicial to the petitioner because of the fact that a "ski mask" is a common type of mask that "armed robbers use". This logical inference was also mirrored by the trial judge. The issue of the evidence that tipped the scales in this case was the testimony elicited by the prosecution of Detective Anderson regarding the ski mask allegedly found at the petitioner's home.

Detective Anderson gave several inconsistent and false testimonies in regards to the alleged "ski mask" finding. Question to the fact is, "Where was this "ski mask" actually found? Within the scope of the Detectives statements and testimony, whether written or orally provided, the state's very own key witness did in fact state that the mask was found at the scene of the crime and then he stated that the mask was found at the petitioner's home. Whether this matter of inconsistencies is deemed minimum or not, this "must" be taken into urgent consideration as to the fact being that the testimony was and is inconsistent since it tipped the scales in the trial proceedings.

Within the underlying trial in this case, Detective, Robert Anderson, testified on direct examination by the State that he retrieved several items from the residence of the petitioner. The items included a "ski mask", even though no evidence was presented that the petitioner wore a mask or any other head covering to conceal his identity. When the issue of the ski mask was questioned, there was a side bar called, the judge had stated that there was nothing that the State really could put on because there was really nothing to show that he had a stocking cap on or a ski mask on, when the State, along with the detective put on this theory. The only thing that was stated with a fact was that the other party had a black jacket and that his face could not be seen.

Again, the Judge told the State that the proof that was leading up to this would be the prejudice that the petitioner apparently had a ski mask that commonly armed robbers use, but this was only a theory, so the State was asked to leave the issue regarding the mask alone. Therefore, the trial counsel failed to request a mistrial or request any curative instruction based on the highly prejudicial testimony regarding the alleged ski cap. The detective testified contrary to his testimony on direct examination when he claimed that he saw the ski cap at the crime scene. Still, the highly prejudicial testimony was allowed and no curative instructions were given. Because no further objections were made by the trial counsel, the petitioner was convicted of first degree felony murder.

For this case to be as complex as it is, the State had already committed a very harmful error by allowing the jury to hear inflammatory testimony in regards to the "ski mask", as well as introducing conflicting testimony that the alleged "ski mask" was found at the petitioner's residence. This in fact was prejudice beyond repair. This evidence surely impacted the jury to the point that they logically inferred that the petitioner had prior knowledge of the robbery and participated in it. This also is an only theory put on by the State, but still the State never put on any proof to that regards, but merely stuck to mere assumption and could not prove this beyond a reasonable doubt. There was really "no" evidence at all to suggest that the petitioner was guilty of anything more than driving his co-defendant to buy some marijuana.

The State's area of vulnerability was whether they would be able to establish the element of "intent" on the part of the petitioner, as it related to the robbery, the predicate felony for the first degree felony murder count. As it relates to the first degree premeditated murder count, the strength of the state's case was obviously, incredibly weak as the jury acquitted the petitioner of that count altogether.

The part of a Court in assessing whether to grant a mistrial is whether the trial court promptly gave a curative instruction. In this case "no" curative instruction was ever requested. Thus, no curative instruction was ever given. The jury was allowed to consider the testimonial evidence and reach an impartial verdict of guilt.

There was direct testimony from two of the State's key witnesses that clearly identified the shooter. The victim's roommate testified that he heard a commotion in the hallway outside of their apartment sometime after midnight on December 20, 2001. The witness, Mr. Bryan Creavalle, stated he heard the victim call out to his mother's name first and then his name. When he opened the front door and saw the victim on the floor wrestling with a man who was later identified as Johnny Woodland, the victim was trying to take Johnny Woodland's gun away as the two men struggled.

Phyllis Palmer, the victim's mother, lived in the apartment across the hall from her son's apartment. She heard noises in the hallway around 1:30 a.m. and opened her front door. Mrs. Palmer saw her son struggling with Mr. Woodland. Mrs. Palmer said that Mr. Woodland had a gun, and the victim was trying to keep Mr. Woodland from firing his weapon, when she went to call 911 she saw Mr. Woodland and the victim roll down the stairs and still struggling, that's when her and Mr. Bryan Creavalle heard three (3) shots.

There was also another witness, Charles Pinkerton, a neighbor whom said he saw two (2) men leaving the apartment building. The shorter man, Mr. Woodland was limping and was carrying a gun, but did not see the second man or could tell he was armed.

Again, it is very important to take into account of the reliability of the eyewitness accounts of the said offense. It is an accurate notation that the petitioner/defendant was at anytime identifiable at the time of the occurrence of the crime, neither did witness state to the fact that the petitioner or anyone had on the alleged "ski mask" or "stocking cap", but within the testimonies provided, it clearly states that one of the defendant's had on a black-leather jacket/or black-jacket with a hood on his head, and his/her face was not seen. To merely state that the second party was the petitioner was not proven beyond reasonable doubt. The only linking issue is that the petitioner simply admitted to given the co-defendant in this instant case a ride to purchase some marijuana. Even within the scope of testimonies provided by the State's key witnesses, it is a given fact to be noted that the petitioner never entered the building, but was downstairs waiting on the street. Since the State opened the door to the theory that the petitioner was criminally responsible for a planned robbery attempt, let's stay more indepth with the theory in a completed symposis of a planned robbery. Wouldn't it be more logical that both parties would have approached the victim with firearms to make sure that the alleged robbery attempt would be successful. Why would only Mr. Woodland go to the victim, ensue in a physical struggle from the victim's apartment all the way down the stairs, and the co-defendant is the only person seen at anytime with a gun? This theory that the petitioner was criminally responsible is not plausible at any level, but utterly ridiculous.

    Due to the fact that the petitioner told the truth - his his own will, voluntarily, linking himself with being with Mr. Woodland after being stopped on the street to give him a ride to purchase marijuana only, does not make him responsible for the evil actions of Mr. Woodland taking another man's life.

The State simply used the petitioner's admission that he did in fact take Mr. Woodland to purchase marijuana, and that apparently was enough for the State to hold the petitioner, Mr. Julius Perkins, responsible for another parties actions.

The State indeed used the self-incrimination tactics on the petitioner, who at the time of this offense was a working citizen in society on a daily basis, and was held accountable for a murder that the State in fact "knew he didn't commit", but used the matter that he did have a gun by his own admittance due to the matter that he himself was a victim of a robbery while being at work. This alone does not make him a murderer due to mere theory.

The petitioner did not know the victim nor did the victim know him, but again, the petitioner was just a driver of someone whom he admittedly took to go purchase some marijuana.

All of the statements that Detective Anderson provided such have been impeached and never been admissable. The theory of the alleged "ski mask or stocking cap" was the only sole evidence that was used by way of a conviction, when neither party involved wore either. A black leather jacket and a hood is two seperate materials of stated descriptive evidence from a "ski mask or stocking cap".

The petitioner, Julius Perkins, was convicted by the use of a "Fatally Defective Indictment" that included evidence not linked to the petitioner, and that was totally falsified, and many inconsistent and false testimonies by the State's own key witnesses. But nothing provided by the State was sufficient to convict the petitioner of any of the crimes set forth in this matter.



Julius Perkins #258949
N.E.C.X.
5244 Hwy. 67 West
P.O. Box 5000
Mountain City, Tn.
37683-5000

RECEIVED

MAR 11 2019

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

NECX MAILROO
MAR 07 2019
RECEIVED

PRIORITY
★ MAIL ★
UNITED STATES
POSTAL SERVICE®
For Domestic and International Use

TRACKED
★ ★ ★
INSURED

LEGAL
MAIL

EXPECTED DELIVERY DAY: 03/09/19
USPS TRACKING NUMBER

9505 5132 5758 9065 1626 47

United States District Court
Of Tennessee
Middle District
801 Broadway; Rm. 800
Nashville, Tennessee
37203

LEGAL
MAIL

THE DEPARTMENT OF CORRECTION/NECX
HAS NEITHER INSPECTED NOR CENSORED AND
IS NOT RESPONSIBLE FOR THE CONTENTS
NECX
P.O. BOX 5000
MOUNTAIN CITY, TN 37683